The opinion of the Court * was drawn up by
Parker C. J.
After the fullest attention to the elaborate arguments in this case, and to the authorities cited, we have come to the opinion, that the report of the referee may be accepted without violating any principle of law, and so far as we can discern the merits of the case, we think that a judgment founded on that report will be perfectly consistent with equity between the parties.
The first objection is, that the referee exceeded his authority, in receiving evidence on the part of the plaintiffs, the tendency of which was to increase the sum found in their favor by Mr. Wood’s former report as auditor. By the rule of reference, the referee is 16 to be at liberty to reconsider and revise any part of said report, upon evidence or arguments which may be offered by the defendant’s counsel.”* [1] It is alleged that he heard new evidence on the part of the plaintiffs, and awarded tu them a larger sum than had been found due on the former report. We can hardly think it was intended to restrain the referee from correcting any mistake which might have been made against the plaintiffs on the former hearing. As we understand the special terms of the rule, the object was to exclude the opinion that the report of the auditor was to be considered final so far as it went, and that the referee was to admit only such new credits to the defendant as should be established by new evidence at the hearing before the referee. He is to be at liberty to reconsider and revise any part of the report, that is, the report is not to be conclusive as to any fact therein found, but is to be open to investigation upon the evidence and arguments which may be offered by the defendant. It ought not to be inferred from this, that it is not to be open to investigation so far as to correct mistakes. On the contrary, it was the referee’s duty so to open it, and so long as his investigation should relate to the subject matter of the *304 former inquiry, it was justifiable under this rule. And we do not find that he went beyond the subject of the former inquiry; the difference in the results of the two cases dees not arise from any new claim introduced by the plaintiffs, but from a different judgment occasioned by additional evidence affecting one of the items which he had before passed upon. Considering that the counsel of the parties were present, with a full opportunity to be heard, we think there is no ground of complaint of the proceedings in this respect. The next objection is, that the action cannot be maintained in its present form, being a joint action, but the interest of the two plaintiffs being several. It would be matter of regret that this objection should be found valid, it being merely technical, and it having been beneficial to the defendant that one action instead of two should be brought. But the de fendant has a right to take all legal exceptions, and we are bound to decide upon them without any prejudice on account of their technical character. It is said that the interest of the plaintiffs is necessarily several, they not being partners, and that the money sought by them to be recovered was not paid out of a joint fund, but that each paid from his own resources certain portions, in which the other had no concern. If this were true, the objection to the action on this account would be well founded ; but this does not appear to us to be the true character of the transaction. The payments made by the plaintiffs to the creditors of the intestate, were supposed to be from a fund in which they had a joint interest as his guardians ; if they could have maintained an action against him before his entiy and avoidance of their deed, it must have been a joint action. They made but one party, being joint guardians, and could not legally sever in any transactions relating to their trust; and when demands were made against them upon their covenants in the deeds, these were joint demands, and joint actions must have been brought against them upon the covenants. This establishes such a union of interest as authorizes, if it does not require them to join in any suit fiar correction of any errors, or for indemnity for any loss occasioned by their joint administration of the affairs of their ward. It is true that their connexion as guardians is *305 dissolved, but their interest remains joint as to any remedies they may be entitled to, on account of any joint transaction founded upon their relation to their ward.,
We have examined the cases cited in support of this objection, and think they are all distinguishable from the present case.
The case of Brand et al. v. Boulcott, 3 Bos. & Pul. 235, was thus. A, B and C were assignees of a bankrupt. A and B alone paid the solicitor’s bill, each paying one half. A and B brought an action jointly against C for his proportion, and it was held not to lie, because, we may presume (the court having stated no reason for their decision), it being necessary to sever the joint interest in order to sue C, there was no joint concern between A and B only, but each one was entitled to recover the excess beyond his own share of the bill. The solicitor would have been obliged to sue all three, and if they had overpaid him, it would seem that all three might unite in an action against him. But where one of the three is alone delinquent, he owes to the other two according to what they have paid, and does not owe both of them jointly. The case before us is where both plaintiffs are united in one trust, and they have occasion to sue their cestui que trust for moneys paid beyond the funds in their hands. It cannot be material whether one paid more or less than the other. They have a joint claim for reimbursement.
The case of Osborne and Campbell v. Harper, 5 East, 225, is stronger in support of the objection, but still different from this case. A, B and C had been partners, but their partnership was dissolved ; after which C drew a bill in the name of the firm in favor of D, who was ignorant of the dissolution. D sued the three, but entered a nolle prosequi in regard to C, who pleaded a certificate of bankruptcy. Judgment was recovered against A and B, which was satisfied by their attorney, who advanced part of the money on their joint credit, and borrowed the residue on their joint note. A and B brought a joint action against C. It seems by the case, that had not these latter facts been established by the affidavit of the attorney, the plaintiffs would have been nonsuited, on the ground that each should have sued for his own share of *306 what was paid. The foundation of that opinion must have been, that when the payment was made, there was no subsisting connexion between A and B, and no joint interest in the sum paid to satisfy the judgment, but for the facts made out by the affidavit of the attorney.
The distinguishing point between that case and the one before us is, that in the latter the payment sought to be restored was made from a joint fund, that is, from the proceeds of the ward’s estate, which, whether rightfully or wrongfully raised, were under the joint control of the two plaintiffs as guardians.
The case of Doremus & al. v. Selden, 19 Johns. R. 213, is somewhat of a similar character. There was no joint payment, nor a payment out of a joint fund. D & W, partners in trade, were joint indorsers of a note protested for nonpayment ; they became insolvent, and one of them was discharged under the insolvent act. When called upon as indorsers, they gave their separate notes, which were accepted as payment by the holder of the first note, which was delivered up to them. They then brought an action for money paid against previous indorsers. It was held, that payment not being made by the plaintiffs jointly, or as partners, nor out of a joint fund, the action could not be maintained. Here, it will be observed, was a complete severance of interests by the insolvency, and by the separate payment by a note given by each for his share, so that there was no pretence of union of interest when the payment was made ; which distinguishes it from our case.
We see nothing therefore in these cases to prevent us from adopting the opinion, that if the plaintiffs have a meritorious cause of action not barred by the statute of limitations, they may recover under the form they have chosen.
With respect to the objection, that the referee took as evidence of payments, the receipts of persons to whom payment was.made, without requiring their testimony, we think it ought not to prevail. In his report he states, that he required the testimony of the receipters, if they were alive and within the commonwealth. It cannot be expected, and never is required, that for money charged in the account of *307 a guardian or administrator, he shall be held to the trouble and expense of charging the estate with a multitude of witnesses.
But we have still to decide, whether the action is barred by the plea of the statute of limitations ; and upon this question we have entertained much doubt. The ground, however, upon which we have finally come to the conclusion that the action is not barred by the statute, is, that it did not accrue, until the intestate, by his entry into the land conveyed by the plaintiffs as guardians, had disaffirmed their contracts and exposed them to actions upon their covenants m behalf of the purchasers.[1] The money they had paid to the creditors of the intestate was strictly paid to his use ; as much so as if he had requested them to pay it, or as if it had been paid for his support. But still they had no right of action against him, because it was paid from his funds or the proceeds of his estate. While he remained under guardianship, or until he had avoided the conveyances, they had no equitable claim upon him, for in truth they had suffered nothing. If they had a right of action at all, it must have been against the creditors, upon the ground that they had paid from supposed funds which had failed ; but we think they could not have prevailed in such action against tire defence which would have been set up, that for aught appearing, the titles of the purchasers never would be disturbed, and that they might never be called on to refund. In such action they must have shown an actual, not a potential or conjectural damage arising out of the invalidity of the titles they had conveyed. When then did the action accrue against the intestate ? The plaintiffs had paid his debts for him, under a legal obligation to do it, as they had possession of his estate ; but they had received an equivalent from that estate. The intestate might have acquiesced in the appropriation of his estate, and while he did, it would be impossible to make him refund ; *308 out afterwards he dissented and avoided the conveyance, and the consequence was an immediate liability of the plaintiffs on their covenants. Though the license to sell was void, so that no title passed under the deed of the guardians, yet it was capable of being confirmed by the intestate after he was released from restraint, and when called upon by the guardians to refund, he might choose to confirm their doings and thus avoid the payment. And this, if it could not technically have been done by deed of confirmation, might have been done by release, the purchasers being in possession under the deed of the guardians. What then is the real state of this case ? The plaintiffs had undertaken the burdensome task of taking charge of the estate of the intestate, who by the laws had become liable to this restraint. Among their duties, that of paying the debts of their ward was prominent. They had not sufficient personal estate of his to enable them to perform this duty and support him and his family, which also was incumbent on them. They applied to the Court of Common Pleas for license to sell the real estate, and it was granted. There is no doubt that they acted bona fide, and probably under advice in which they confided. The grant of the license by the court would confirm this confidence, and there is no question but that they sold without the least doubt of their lawful authority so to do. The proceeds went to the use of their ward, and they never could have thought of suing him for the money paid for him, supposed to be his, until their doings were vacated by him. Certainly their claim is very strong in equity, and we think there is no impediment in law to their recovery, for their right of action could not have originated until he had denied the application of his funds to the payment of his debts. They could not have obliged the creditors of the intestate to refund, for they had a lawful right to pay the debts of their ward, and the creditors had a lawful right to receive payment. They could not have maintained an action against their ward, because while the title they had conveyed was undisturbed, they had suffered no damage and had no cause of complaint. It is the act of the intestate alone, of entering upon the lands and claiming them as not having passed by *309 the cbeds, which gave them a right to reclaim the money they had paid on the supposition that it was his money, but which his dissent rendered their own, which they had paid to his use.
But there is some reason to believe that this case, which has become so complicated on account of the very strenuous opposition which has been made to the plaintiffs’ demand, and the ingenious and elaborate arguments which have accompanied its various stages, is really very simple when stripped of circumstances that do not belong to it. The plaintiffs have paid considerable sums for the support of the intestate and the payment of his debts, relying upon their power over his real and personal estate to reimburse themselves. The estate which they held of his and the supposed power to convert it into money, were the consideration for their advances. This consideration has failed by the act of the intestate himself; why then shall not the money they have paid be returned, to the extent of the deficiency thus created ? In this view of the subject, the case assumes the common shape of money paid by one for another, relying upon funds which are with drawn, or which by some mistake or accident, or by the act of the principal without the fault of the agent, have become unavailable. Such a state of facts gives cause of action for money paid to the use of the principal. The only question would be, when did the action accrue ; and we think certainly not until the act took place which converted the principal into a debtor to his agent; which would not be until the funds were withdrawn or rendered useless to the agent. If it be oejected, that a voluntary payment of the debt of another, without any request or subsequent assent of the debtor, would give no ground of action, it may be answered, that the obligation of a guardian to pay the debts of his ward is equivalent to a request from the ward ; which indeed in point of fact would be nugatory, as the law has taken from him all control over his property. Upon this narrow ground we think the plaintiffs are entitled to recover, to the extent of the real estate which they had mistakenly applied to their credit towards the payments made by them, if that real estate has *310 been reclaimed by the intestate or his heirs, so as to oblige the plaintiffs to refund to the purchasers.
And in adopting this opinion we do not contradict the decision of the Court in a former action between these parties. At the time of the trial of that action, although the intestate had entered upon or brought his action for the lands, yet nothing had been paid by the plaintiffs to the purchasers on the covenants. There was therefore no damage, but only a liability, and if they had recovered, it might have been that they would never have been compelled to pay, and then they would have received their money tw'ce ; which would have been inequitable. Now the money has been paid, and we think it immaterial whether this has been caused by the entry of the intestate or of his heirs ; for it was the estate of the deceased which received the benefit of the payment of the debts, and that ought to answer the just claim of the plaintiffs. There was at the time when the action was commenced, a complete right of action against the defendant as administrator of the intestate, founded on the act of the intestate in disaffirming the doings of the plaintiffs, and reclaiming the funds upon the faith of which the plaintiffs had credited the estate against the payments made by them. Before this they had no cause of action, and the statute runs, not from the time when they made their payments, but from the time when the fund was reclaimed. In the case of Thames v. Savage, 14 Mass. R. 425, where money was paid on the promise of the intestate to convey an estate, which he died without doing, and the statute of limitations was pleaded, it was held that the action did not accrue when the money was paid, but at the death of the intestate, he having his lifetime to convey the land. So in the case of Walker v. Bradley, 3 Pick. 261, where the plaintiff as administrator had paid the defendant the whole of his debt upon the supposition that the estate was solvent, which turned out to be insolvent, it was decided that the cause of action arose when the insolvency was ascertained by a decree, not when the money was paid. In these cases the payment of the money merely gave no ground of action, because it was rightfully paid upon an *311 existing consideration, but afterwards the consideration was removed or failed, and then a right of action sprang up.
Both these cases resemble the one before us as to this point. When the money was paid, it was paid by the plaintiffs as trustees, out of the trust estate, under a belief that they could lawfully so appropriate it. No action lay while the cestui que trust either by implication or in fact acquiesced. But as soon as he assumed his right over the estate sold, the plaintiffs’ right to be restored to the money they had paid for his use began, and the six years are to be reckoned from that time.[1]
Upon the principles and for the reasons stated, we are of opinion that the report of the referee ought to be accepted, and that judgment should be rendered thereon for the amount stated to have been paid out by the plaintiffs to the purchasers of the land, according to the corrected report of the referee, which is 1443 dollars and 20 cents ; upon which interest is to be calculated from the date of the writ in this suit.

 Morton J. did not sit in this cause.

 See Revised Stat. c. 96, § 29.

 In an action for not delivering goods shipped on board a vessel, which was chartered by paroi to an infant, it was held, that the contract of charter was not void but voidable, and it not having been avoided by the infant, the shipper had no cause of action against the general owners. Thompson v. Hamilton, 12 Pick. 425.

 See Leinhart v. Forringer, 1 Rawle, Penrose & Watts, 492 ; 2 Stark. Ev. (5th Amer. ed.) 477.